# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COACHELLA MUSIC FESTIVAL, LLC, et al., ) ) ) | |
| Plaintiffs, ) | Civil Action No. 23-288 (RBW) |
| ) | |
| v. ) | |
| ) | |
| JUSTIN JOHNSON and KELSYE ADAMS, ) ) | |
| ) | |
| Defendants. ) ) | |

## <u>MEMORANDUM OPINION</u>

On February 1, 2023, the plaintiffs—Coachella Music Festival, LLC, and Goldenvoice, LLC—initiated this civil action against the defendants, Justin Johnson and Kelsye Adams, alleging claims of trademark infringement, unfair competition, and false designation of origin. See Complaint for (1) Trademark Infringement Under 15 U.S.C. § 1114; (2) False Designation of Origin Under 15 U.S.C. § 1125(a); and (3) Common Law Trademark Infringement and Unfair Competition ("Compl.") at 14–17, ECF No. 1. Currently pending before the Court is the Plaintiffs' Motion for a Preliminary Injunction ("Pls.' Mot."), ECF No. 51.[1] For the following reasons, the Court must grant the plaintiffs' motion.

---

[1] The Court notes that the defendants failed to file an opposition to the plaintiffs' motion, despite having the opportunity to do so. See Minute Order (Mar. 14, 2024) ("It is [ordered] that, on or before March 25, 2024, the defendants shall file their opposition to the plaintiffs' motion [for a preliminary injunction].").

# I.   BACKGROUND

## A.   Factual Background

The following allegations are derived from the plaintiffs' affidavits supporting their motion for a preliminary injunction.  See LCvR 65.1(c) ("The application [for a preliminary injunction] shall be supported by all affidavits on which the plaintiff[s] intend[] to rely.").  "Held each year at the Empire Polo Club in Indio, California, the Coachella Valley Music and Arts Festival ('Coachella' or the 'Festival') is one of the most critically acclaimed music and art festivals in the world."  Pls.' Mot., Exhibit ("Ex.") 3 (Declaration of Jason Bernstein in Support of Plaintiffs' Motion for Preliminary Injunction (Mar. 14, 2024) ("Bernstein Decl.")) ¶ 3, ECF No. 51-3.  "Attendance to Coachella, aggregated over its two consecutive weekends, is estimated at nearly 750,000 attendees."  Id., Ex. 3 (Bernstein Decl.) ¶ 5.  The plaintiffs "report attendance and sales figures from Coachella, and according to the music industry publication Pollstar, Coachella has been the number one grossing music festival in the world every year it has been held since Pollstar began releasing festival grosses information in 2012—with the exception of 2016[.]"  Id., Ex. 3 (Bernstein Decl.) ¶ 6.  "Coachella showcases some of the most groundbreaking artists from all genres of music along with a substantial selection of art installations from all over the world."  Id., Ex. 3 (Bernstein Decl.) ¶ 9.  "The festival's venue also includes camping facilities for some 15,000 attendees . . ., [ ] a curated selection of food and beverages from a wide variety of restaurants, . . . [and] an extensive art exhibit[.]"  Id., Ex. 3 (Bernstein Decl.) ¶ 10.

The plaintiffs "extensively promote Coachella through a variety of media, including via the Internet on its website, . . . and on numerous social media sites including YouTube, Facebook, Instagram, Pinterest, and Twitter."  Id., Ex. 3 (Bernstein Decl.) ¶ 13.  Indeed, the

plaintiffs "have invested substantial sums in media and related content to promote the Coachella Festival." Id., Ex. 3 (Bernstein Decl.) ¶ 14.  The plaintiffs "own[] numerous federal registrations for the CHELLA, COACHELLA, COACHELLA (stylized), and COACHELLA VALLEY MUSIC AND ARTS FESTIVAL trade and service marks[.]" Id., Ex. 3 (Bernstein Decl.) ¶ 17. "Specifically, [the p]laintiffs own: United States Reg. Nos. 5,075,233 and 5,520,063 for CHELLA; United States Reg. Nos. 3,196,119, 4,270,482, 5,235,905, 5,557,242, for COACHELLA; United States Reg. Nos. 3,196,129, 4,266,400, and 5,235,903 for COACHELLA (stylized); and United States Reg. Nos. 3,196,128, 3,965,563, 3,196,128, and 4,008,651 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL." Id., Ex. 3 (Bernstein Decl.) ¶ 17. These registration certificates are attached as exhibits to the plaintiffs' motion.  Id., Ex. 11 (Coachella Registration Certificates (Mar. 14, 2024)), ECF No. 51-11.

The plaintiffs allege that the defendants "organize live music events under the MOECHELLA Marks, beginning with a music event that took place in Washington, D.C. in 2019." Pls.' Mot., Ex. 3 (Bernstein Decl.) ¶ 19.  They further represent that "[o]n or about January 5, 2023, [the d]efendants sent an email announcement to numerous recipients regarding at least ten upcoming events in 2023 and the announcement included use of the MOECHELLA Marks[,]" id., Ex. 3 (Bernstein Decl.) ¶ 25, despite the plaintiffs' "repeated[] request[s] that [the d]efendants cease use of the MOECHELLA Marks and any similar designation[,]" id., Ex. 3 (Bernstein Decl.) ¶ 26.  Finally, the plaintiffs claim that "in late-February 2023[,]" after the Complaint was filed, the defendants, "and in particular [d]efendant Johnson, has been using the MOECHELLA Marks in connection with a popup restaurant located at a restaurant called Baby Wale in Washington, D.C." Id., Ex. 3 (Bernstein Decl.) ¶ 27.  Accordingly, the plaintiffs "move

for an order entering a preliminary injunction preventing [the d]efendants' continued use of the MOECHELLA trademarks and service marks." Id. at 1.

**B.      Procedural Background**

On March 14, 2024, the plaintiffs filed their motion for a preliminary injunction.  See id. On that same date, the Court ordered "that, on or before March 25, 2024, the defendants shall file their opposition to the plaintiffs' motion."  Minute Order (Mar. 14, 2024).  Despite the Court's instruction, the defendants have failed to file an opposition to the plaintiffs' motion.

## II.     ANALYSIS

In their motion, the plaintiffs state that they "seek an injunction to stop [the d]efendants' continued and recently increased instances and types of infringement of the well-known CHELLA and COACHELLA Marks because [the p]laintiffs face irreparable harm if [the d]efendants are not ordered to stop violating [the p]laintiffs' rights, something [the d]efendants have already [] told the Court they had done."  Pls.' Mot. at 13.

"District courts have the power to grant preliminary injunctions under Rule 65 of the Federal Rules of Civil Procedure."  Nat'l Min. Ass'n v. Jackson, 768 F. Supp. 2d 34, 48 (D.D.C. 2011) (Walton, J.).  Moreover, the Lanham Act specifically provides courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office[.]"  15 U.S.C. § 1116(a).

A preliminary injunction "is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'"  Sherley v. Sebelius, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)).  "To obtain a preliminary

injunction, the moving party must show: (1) that [it] is likely to succeed on the merits of [its] claim; (2) that [it] is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in [its] favor; and (4) that a preliminary injunction is in the public interest."  Giri v. Nat'l Bd. of Med. Exam'rs, No. 24-cv-410 (CRC), 2024 WL 756604, at *4 (D.D.C. Feb. 23, 2024).  "Historically, these factors have 'been evaluated on a sliding scale[.]" Id. at *5 (internal quotation marks omitted) (quoting Davis v. Pension Benefit  Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009).  However, the District of Columbia Circuit "has [recently] hinted, though not held, that Winter [v. National Resources Defense Council, Inc., 555 U.S. 7 (2008)] establishes that 'likelihood of irreparable harm' and 'likelihood of success' are 'independent, free-standing requirement[s].'"  Giri, 2024 WL 756604, at *5 (quoting Sherley v. Sebelius, 644 F.3d 388, 392–93 (D.C. Cir. 2011)).  "In any event, [the] Court need not resolve the viability of the sliding-scale approach today, as it determines[,]" id., that issuing a preliminary injunction is appropriate under either standard for the following reasons.

A.      **Whether the Plaintiffs Have Shown a Likelihood of Success on the Merits**

        The plaintiffs argue that they "possess a strong likelihood of success on the merits."  Pls.' Mot. at 14.  More specifically, the plaintiffs allege that "[e]ven at this early stage in the litigation, the evidence shows that [the p]laintiffs are highly likely to succeed on their infringement claims."  Id. at 14–15.

        "To establish a trademark infringement claim under the Lanham Act, [the plaintiffs] must show that [the defendants] used in commerce, without [the plaintiffs'] consent, a 'reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with which such use is likely to cause confusion.'"  Am. Soc'y for Testing & Materials, et al. v. Public.Resource.Org, Inc., 896 F.3d 437, 455–56 (D.C. Cir. 2018) (quoting 15 U.S.C. § 1114(1)(a)).  "This inquiry

boils down to two questions: (1) do[] [the plaintiffs] own 'a valid mark entitled to protection' and (2) is [the defendants'] 'use of it . . . likely to cause confusion.'" Id. at 456 (quoting Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993)).  The Court will consider each question in turn.

1.      **Whether the Plaintiffs Own a Valid Mark Entitled to Protection**

The plaintiffs first contend that the defendants "cannot contest the validity of [the p]laintiffs' marks."  Pls.' Mot. at 15.  More specifically, the plaintiffs claim that they "own[] valid trademark and service mark rights in their COACHELLA Marks, which [the p]laintiffs use in connection with a wide range of goods and services[,]" id. at 15, and that "the certificates provide sufficient evidence of ownership and validity for these marks[,]" id. at 15–16.

A certification of registration "qualifies as prima facie evidence of [the plaintiffs'] ownership of the mark and [their] exclusive right to use the mark in commerce, and it also means that the mark is presumptively valid."  Yah Kai World Wide Enter., Inc. v. Napper, 195 F. Supp. 3d 287, 311 (D.D.C. 2016); 15 U.S.C. § 1057(b) ("A certificate of registration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce or in connection with the goods and services specified in the certificate, subject to any conditions or limitations stated in the certificate.").

Here, the plaintiffs have provided federal registration certifications for the CHELLA, COACHELLA, COACHELLA (stylized), and COACHELLA VALLEY MUSIC AND ARTS FESTIVAL trade and service marks.  See id., Ex. 3 (Bernstein Decl.) ¶ 17; id., Ex. 11 (Coachella Registration Certificates).  These certifications of registration provide prima facie evidence of

ownership and validity for these marks.  See 15 U.S.C. § 1057(b).  Given that the defendants have failed to contest this prima facie evidence, the Court must conclude, at this stage of the litigation, that (1) the plaintiffs own these marks and (2) these marks are entitled to protection. The Court will next consider if the defendants' use of MOECHELLA is likely to cause confusion.

**2.      Whether the Defendants' Use of MOCHELLA is Likely to Cause Confusion**

The plaintiffs argue that the defendants' "use of MOECHELLA is highly likely to cause confusion."  Pls.' Mot. at 16.  "There are seven factors that the [District of Columbia] Circuit has found relevant to an evaluation of consumer confusion for Lanham Act purposes: '(1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) evidence of actual confusion; (5) the defendant's purpose or reciprocal good faith in adopting its own mark; (6) the quality of [the] defendant's product; and (7) the sophistication of the buyers.'"  Yah Kai World Wide Enter., 195 F. Supp. 3d at 317 (quoting Globalaw Ltd. v. Carmon & Carmon L. Off., 452 F. Supp. 2d 1, 48 (D.D.C. 2006)). "[N]one of [these factors are] individually determinative and not all . . . must be given equal weight or be present in every case[.]"  Id. (alterations in original) (quoting Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo SA. De C.V., 69 F. Supp. 3d 175, 198 (D.D.C. 2014)).  The Court concludes that four of the factors—viz., the strength of the plaintiffs' mark; the degree of similarity between the two marks; the proximity of the products; and the defendants' purpose in adopting their own mark—weigh in favor of a likelihood of confusion.[2]

---

[2] Given that the parties have just commenced discovery, the Court has no basis to opine on the remaining three factors—viz., evidence of actual confusion; the quality of defendants' products; and the sophistication of the buyers. This is the result of neither party having provided evidence bearing on any of these factors.  Accordingly, the Court must conclude that, at this stage of the litigation, these three factors are neutral.

a.      The Strength of the Plaintiffs' Marks

The plaintiffs argue that "[t]he fact that [the d]efendants here chose their name MOECHELLA as a reference to [the p]laintiffs' COACHELLA Marks is clear evidence of the strength of the mark, both in the mind of consumers, and in the minds of the [d]efendants who chose that infringing name as a reference to [the p]laintiffs." Pls.' Mot. at 17. Moreover, the plaintiffs claim that "due to extensive advertising, length of exclusive use, public recognition, and uniqueness, [the plaintiffs'] well-known COACHELLA [and CHELLA] trademarks and service marks are extremely strong." Id. at 18.

"The strength of a mark refers to its distinctiveness or its tendency to identify the goods sold under the mark as emanating from a certain source." Int'l Council of Shopping Ctrs., Inc. v. RECONCRE, LLC, No. 20-cv-2551 (RC), 2021 WL 148387, at *3 (D.D.C. Jan. 14, 2021). Courts "measure[] a mark's strength along two axes: conceptual strength, or how distinctive a mark is among marks, and commercial strength, the marketplace recognition value of the mark." Id. (internal quotation marks omitted).

To determine conceptual strength, "[c]ourts have identified four general categories of terms: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." Blinded Veterans Ass'n v. Blinded Am. Veterans Found., 872 F.2d 1035, 1039 (D.C. Cir. 1989). Suggestive, arbitrary, and fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). Conversely, "[m]arks which are merely descriptive of a product are not inherently distinctive." Id. at 769.

To determine commercial strength, courts look to evidence such as "the duration and continuity of the [mark's] use, the extent of advertising and promotion dedicated to it, figures

8

showing sales or consumer views, and identification of the parties' respective markets."

RENCORE, 2021 WL 148387, at *7 (internal quotation marks omitted).

Here, the Court concludes that the plaintiffs' marks are "arbitrary," as they have no connection to the types of goods and services offered—viz., music festivals or other entertainment services.  In other words, the plaintiffs' marks, COACHELLA and CHELLA, "in no way describe or have any 'intrinsic connection' to the particular product/service [they are] meant to identify, and thus, are inherently distinctive" and are entitled to protection.  Yah Kai World Wide Enter., 195 F. Supp. 3d at 314.

Moreover, based on the plaintiffs' affidavits, the plaintiffs' marks appear to be commercially strong.  As an initial matter, the plaintiffs represent that they have "used the [COACHELLA] mark in connection with the festival and related goods and services since the first Festival in 1999[,]" Pls.' Mot., Ex. 3 (Bernstein Decl.) ¶ 15, and have "also own[ed] [the] trademark and service mark rights in the distinctive CHELLA mark, which has for many years been used by both the public and [the p]laintiffs to identify the Coachella Valley Music and Arts Festival[,]" id., Ex. 3 (Bernstein Decl.) ¶ 16.  Furthermore, the plaintiffs state that they "have invested substantial sums in media and related content to promote the Coachella Festival[,]" id., Ex. 3 (Bernstein Decl.) ¶ 14, "including via the Internet on its website, . . . and on numerous social media sites including YouTube, Facebook, Instagram, Pinterest, and Twitter, id., Ex. 3 (Bernstein Decl.) ¶ 13.  Finally, the plaintiffs represent that "[a]ttendance to Coachella, aggregated over its two consecutive weekends, is estimated at nearly 750,000 attendees[,]" id., Ex. 3 (Bernstein Decl.) ¶ 5, and that "Coachella has been the number one grossing music festival in the world every year it has been held since Pollstar began releasing festival grosses information in 2012—with the exception of 2016," id., Ex. 3 (Bernstein Decl.) ¶ 6.  Based on

these representations, the Court concludes that the plaintiffs' COACHELLA and CHELLA

marks are conceptually and commercially strong, and "are[, thus,] entitled to protection."

Blinded Veterans Ass'n, 872 F.2d at 1039.  Accordingly, the first factor weighs in favor of a

likelihood of confusion.

> **b.      The Degree of Similarity Between the Two Marks**

Next, the plaintiffs argue that the defendants' MOECHELLA mark "adopts the CHELLA

mark in its entirety and is confusingly similar to the other COACHELLA [m]arks."  Pls.' Mot. at

19.  More specifically, the plaintiffs claim that "[t]he ordinary consumer who is not greatly

familiar with both sides' marks and their differences would be expected to draw an association

between such highly similar marks."  Id. at 23.

"The similarity of the senior and junior marks is a factor of considerable weight."  Yah

Kai World Wide Enter., 195 F. Supp. 3d at 317–18 (quoting AutoZone, Inc. v. Tandy Corp., 373

F.3d 786, 795 (6th Cir. 2004)).  "Exact similitude is not required between [the] defendants[']

mark and the [plaintiffs'] registered marks for there to be infringement.  It is sufficient if the

similarities outweigh any differences."  U.S. Olympic Comm. v. Int'l Fed'n of Body Builders,

No. 81-cv-969, 1982 WL 917454, at *13 (D.D.C. Dec. 1, 1982).  "In comparing marks for

similarity of sound, appearance or meaning, they must be viewed from the point of an ordinary

buyer of the goods or services, including the fact that such purchasers may know the marks

generally but fail to remember minute distinctions."  Id.  Thus, "[t]he buyer of goods or services

of the parties is under no duty to dissect and analyze trademarks or conduct an investigation of

any possible connection, sponsorship, or association between the parties."  Id.  Accordingly,

"[t]he marks must be compared not by examining in minute detail their differences, but by

viewing them in their entireties, to capture the general impression that they would give a

consumer." Am. Ass'n for Advancement of Sci. v. Hearst Corp., 498 F. Supp. 244, 259 (D.D.C. 1980).  Crucially, "although the marks may have minor differences, confusion may be likely if the dominant portion of both marks is the same." Id.

Here, the Court concludes that the MOECHELLA mark is highly similar to the COCHELLA marks.  Indeed, "the dominant portion of both marks [i.e., CHELLA] is the same." Id.  Furthermore, the MOECHELLA mark incorporates the entirety of the plaintiffs' CHELLA mark, which would likely serve to confuse the average consumer.  Thus, the average consumer viewing the MOECHELLA mark "is likely to be confused as to its source, if not mistake it for [COACHELLA or CHELLA]." Id.  "The bottom line is this: the fact that [the defendants are] now using a virtually identical name as the distinctive, protected service mark that [the plaintiffs] own and [use] in order to market virtually identical products and services [i.e., music entertainment services and consumer apparel,] . . . is a clear indication that the average consumer is likely to be confused into believing that [the defendants' mark] is affiliated with, or sponsored by, the [plaintiffs]." Yah Kai World Wide Enter., 195 F. Supp. at 319.  Accordingly, the Court concludes that the second factor also weighs in favor of a likelihood of confusion.

    c.    **The Proximity of the Products**

    The plaintiffs next argue that "even without the high similarity between the parties' marks, their goods and services would be considered sufficiently proximate for this factor to tip in [the p]laintiffs' favor."  Pls.' Mot. at 25.  "This factor focuses on whether the two products compete with each other.  To the extent goods (or trade names) serve the same purpose, fall within the same general class, or are used together, the use of similar designations is more likely to cause confusion." Globalaw Ltd., 452 F. Supp. 2d at 50 (internal quotation marks omitted) (quoting Savin Corp. v. Savin Grp., 391 F.3d 439, 458 (2d Cir. 2004)).  "This confusion need not

necessarily result from direct competition between the entities; instead, the statute requires a showing of 'source confusion' where consumers in the relevant product market are likely to believe that [the] defendant's products or services come from the same source or are affiliated with [the] plaintiff." Appleseed Found. Inc. v. Appleseed Inst., Inc., 981 F. Supp. 672, 674–75 (D.D.C. 1997).

Here, both parties provide similar goods and services.  More specifically, both the plaintiffs and the defendants organize and produce live music events.  See, e.g., Pls.' Mot., Ex. 3 (Bernstein Decl.) ¶ 9 ("Coachella showcases some of the most groundbreaking artists from all genres of music along with a substantial selection of art installations from all over the world."); id., Ex. 3 (Bernstein Decl.) ¶ 19 ("It is my understanding from publicly available sources that [the d]efendants organize live music events under the MOECHELLA Marks, beginning with a music event that took place in Washington, D.C. in 2019.").  Moreover, both parties sell apparel and provide food and beverage services.  See id., Ex. 3 (Bernstein Decl.) ¶¶ 10–11 ("[Coachella's] venue also includes camping facilities . . ., [] a curated selection of food and beverages from a wide variety of restaurants, . . . [and] is also widely recognized for its fashion and has developed a reputation as an unofficial kick-off to summer styles[.]"); id., Ex. 3 (Bernstein Decl.) ¶ 27 ("I learned for the first time in late-February 2023 that [the d]efendants . . . ha[d] been using the MOECHELLA Marks in connection with a popup restaurant located at a restaurant called Baby Wale in Washington, D.C."); Compl. ¶ 4 ("In addition to live music events, [the d]efendants have offered apparel under the MOECHELLA Marks[.]").  Thus, the Court concludes that the products and services both parties provide "fall within the same general class," and thus, their "use of similar designations is more likely to cause confusion."  Globalaw

Ltd., 452 F. Supp. 2d at 50.  Accordingly, the Court finds that the third factor weighs in favor of a likelihood of confusion.

> ### d.      The Defendants' Intent

Finally, the plaintiffs argue that the defendants "intentionally and knowingly adopted and used the infringing MOECHELLA Marks."  Pls.' Mot. at 26.  In support of their argument, the plaintiffs state that defendant Justin Johnson "has essentially admitted that [the d]efendants intentionally selected MOECHELLA to imitate the COACHELLA Marks."  Id. at 27; see Pls.' Mot., Ex. 13 (Articles regarding MOECHELLA (Oct. 26, 2022)) at 6, ECF No. 51-13 (defendant Justin Johnson stating "'moe' [is] slang for friend, combined with a play on the California festival" COACHELLA).

The intent "factor considers 'whether the defendant adopted its mark with the intention of capitalizing on [the] plaintiff's reputation and goodwill and any confusion between his and the senior user's product.'"  RECONCRE, 2021 WL 148387, at *10 (quoting Globalaw Ltd., 452 F. Supp. 2d at 53).  "The issue of the purpose or intent of the defendants in adopting and using the challenged marks is unnecessary to a finding of trademark infringement or unfair competition." U.S. Olympic Comm., 1982 WL 917454, at *14.  "However, if shown, a purpose to adopt a mark similar to the [plaintiffs'] marks leads to a finding that the marks are confusingly similar."  Id.; see also Am. Ass'n for Advancement, 498 F. Supp. at 260 ("An alternative, although unnecessary, means of showing likelihood of confusion is by the presumption that proof of wrongful intent on the part of the defendant raises.").  "Adoption by [the] defendants of the [plaintiffs'] mark [] with full knowledge and awareness of the [plaintiffs'] mark, when coupled with the defendants' complete freedom to choose any marks, establishes that [the] defendants

intended to trade upon the goodwill of the [plaintiffs]."  U.S. Olympic Comm., 1982 WL
917454, at *14.

However, even without a direct showing of an intent to infringe, "[i]t is well settled in
trademark law . . . that a newcomer . . . has a duty to mark his product so as to avoid confusion
with existing products of the same genre."  Am. Ass'n for Advancement, 498 F. Supp. at 261.  If
a defendant fails to abide by that duty, such "carelessness is [also] a factor weighing in favor of
granting relief[.]"  Id.

Here, based on the plaintiffs' declarations, it appears that the defendants intentionally
selected MOECHELLA to imitate the COACHELLA Marks.  See, e.g., Pls.' Mot., Ex. 13
(Articles regarding MOECHELLA (Oct. 26, 2022)) at 6 (defendant Justin Johnson stating
"'moe' [is] slang for friend, combined with a play on the California festival" COACHELLA).
However, even if the defendants did not have such an intent, it "stretch[es] credulity beyond its
breaking point to suppose that [the defendants] would not have familiarized [themselves] with
the brands and names under which [their] competitior[s] do[] business."  Am. Ass'n for
Advancement, 498 F. Supp. at 261 (internal quotation marks omitted).  Indeed, as noted earlier,
"Coachella has been the number one grossing music festival in the world every year it has been
held since Pollstar began releasing festival grosses information in 2012—with the exception of
2016," Pls.' Mot., Ex. 3 (Bernstein Decl.) ¶ 6, which leads the Court to the conclusion that "[a]t
the minimum, [the defendants] w[ere] careless [in adopting their nearly identical mark], . . .
[which] is a factor weighing in favor of granting relief to [the plaintiffs]."  Am. Ass'n for

Advancement, 498 F. Supp. at 261.  Accordingly, the Court finds that the intent factor also weighs in favor of a likelihood of confusion.

Given that the plaintiffs have demonstrated that (1) they own a valid mark entitled to protection and (2) the defendants' use of it is likely to cause confusion, the Court concludes that the plaintiffs have shown a likelihood of success on the merits on their trademark infringement claim.

**B.      Whether the Plaintiffs are Likely to Suffer Irreparable Harm Absent an Injunction**

Next, the Court considers the second preliminary injunction factor—viz., whether the plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief."  Winter, 555 U.S. at 20.  Under the Lanham Act, plaintiffs "seeking an[] injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in [the act] in the case of a motion for a preliminary injunction." 15 U.S.C. § 1116(a).  Given that the Court has already concluded, in the absence of any rebuttal, that the plaintiffs are likely to succeed on the merits of their trademark infringement claim under the Lanham Act, the Court must also conclude that the plaintiffs have demonstrated that they are likely to suffer irreparable harm absent an injunction.  See id.

**C.      Whether the Balance of Equities Favors the Plaintiffs**

The Court next turns to the third preliminary injunction factor—viz., whether "the balance of equities" is in the plaintiffs' "favor."  Winter, 555 U.S. at 20.  As other members of this Court have noted, "[t]he balance of harms cannot favor a defendant whose injury results from the knowing infringement on the plaintiff's trademark."  Delta Sigma Theta Sorority, Inc. v. Allen Pro. Graphics Grp., LLC, 212 F. Supp. 3d 116, 120 (D.D.C. 2014) (alteration in original).  "Otherwise, every infringer who invested large sums of money in the unlawful activity

could shield its wrongdoing." Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n, 929 F. Supp. 473, 478 (D.D.C. 1996). As discussed supra Section II.A.2.d, it appears that the defendants intentionally selected the name MOECHELLA to imitate the COACHELLA Marks. See, e.g., Pls.' Mot., Ex. 13 (Articles regarding MOECHELLA (Oct. 26, 2022)) at 6 (defendant Justin Johnson stating "'moe' [is] slang for friend, combined with a play on the California festival" COACHELLA). Moreover, even assuming arguendo that the defendants were not initially on notice of their potentially infringing activities, the "[p]laintiffs have, through their attorneys, repeatedly requested that [the d]efendants cease use of the MOECHELLA Marks and any similar designation[.]" Id., Ex. 3 (Bernstein Decl.) ¶ 26. Therefore, the defendants were eventually on notice of their infringement of the plaintiffs' trademark.

Furthermore, the Court is not persuaded that any injury to the defendants would be significant if an injunction is issued. In other words, "the issuance of a preliminary injunction [against the defendants] would not force [them] to stop providing the [goods and] services currently available[.] It would merely require [the defendants] to differently identify the [goods and] service[s] provided[,]" Malarkey-Taylor Assocs., 929 F. Supp. at 478–79, without use of the MOECHELLA Mark. Accordingly, the Court concludes that the balance of the harms favors granting the plaintiffs a preliminary injunction.

**D.     Whether an Injunction is in the Public Interest**

Finally, the Court addresses the fourth and final preliminary injunction factor—i.e., whether "an injunction is in the public interest." Winter, 555 U.S. at 20. Based on the record before it, the Court concludes that "[g]ranting a preliminary injunction will further the public interest." Delta Sigma Theta Sorority, Inc., 212 F. Supp. 3d at 120. Specifically, "[i]t is within

the public interest for the Court to take action to prevent public deception and confusion over the source or origin of goods [and services]." Id.; see Crime Control, Inc. v. Crime Control, Inc., 624 F. Supp. 579, 582 (D.D.C. 1984) ("The public has a right not to be deceived or confused."). "This is particularly true where the preliminary injunction will not stop [the d]efendants from marketing all products [or services], but will only require that they stop using [the plaintiffs'] [m]arks [to do so]." Delta Sigma Theta Sorority, Inc., 212 F. Supp. 3d at 120. Accordingly, the Court concludes that a preliminary injunction is in the public interest.

### III.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the plaintiffs' motion for a preliminary injunction.

**SO ORDERED** this 4th day of April, 2024.[3]

REGGIE B. WALTON
United States District Judge

---

[3] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.